## UNITED STATES DISCTRICT COURT
## FOR THE MIDDLES DISTRICT OF FLORIDA

**GALEN and WENDY ALSOP, as individuals,**
**FLORIDA REAL ESTATE RENTALS,**
**LLC, a Florida Limited Liability Company,**
**MICHAEL MCGRATH, an individual,**
**PAUL GASSNER, an individual, and**
**MARK PEERY, an individual.**
                    **Plaintiff's,**
**v.**                                                    **Case No.:**


**THE HONORABLE RONALD DESANTIS**
       **In his Capacity as Governor of**
       **The State of Florida**
                    **Respondent,**
_____/


## PLAINTIFF'S EMERGENCY COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF, AND FOR A TEMPORARY RESTRAINING ORDER WITH INCORPORATED MEMORANDUM OF LAW

COMES NOW the Plaintiffs, GALEN and WENDY ALSOP, as individuals, FLORIDA REAL ESTATE RENTALS, LLC, a Florida Limited Liability Company, MICHAEL MCGRATH, an individual, PAUL GASSNER, an individual and MARK PEERY, an individual, by and through the undersigned attorneys, pursuant to Rule 65 of Federal Rules of Civil Procedure and respectfully moves this Honorable Court to grant Plaintiff's Emergency Complaint for Declaratory and Injunctive Relief, to grant a Temporary Restraining Order in favor of these Plaintiffs and all others in the State of Florida similarly situated, against the Respondent, Governor Ronald Desantis, and states as follows:


## PART I. INTRODUCTION

1.   This case seeks to protect and vindicate fundamental liberties that citizens of the United States enjoy free from government interference.  In the instant case, Plaintiffs are Florida citizens whose liberties protected by both the Florida and United States Constitutions have been

denied through the arbitrary application of Executive Orders issued under a declared State of Emergency.   The liberties protected by the Constitution are not conferred or granted by government to then be rescinded at the will and whims of government officials.  These God-given liberties are possessed by the people, and they are guaranteed against government interference by the United States Constitution, which is the supreme law of the land, and by the Constitution of the State of Florida.

2.   Any government that has made the grave decision to suspend the liberties of a free people during a health emergency should welcome the opportunity to demonstrate-both to its citizens and to the courts-that its chosen measures are absolutely necessary to combat a threat of overwhelming severity. The government should also be expected to demonstrate that less restrictive measures cannot adequately address the threat.  Whether it is strict scrutiny or some other rigorous form of review, courts must identify and apply a legal standard by which to judge the constitutional validity of the government's anti-virus actions.

3.   Governors wield the highest state power when confronting a health crisis.  But ample police powers to administer health, safety, and welfare matters do not obviate state officials' grave duty to safeguard civil liberties. The "Flatten the Curve" campaign to avoid hospital overload was within state powers as a legitimate and attainable regime.   However, any legitimate action that infringes upon civil liberties must closely target the root of crisis.  Executive orders, not supported by legislative vote, especially those that impose criminal penalties, must be clearly written and respectful of constitutional due process. Yet Respondent banned vacation rentals while leaving open hotels, resorts, and timeshares. Timeshare condos are allowed to open, resort lodges that are like condos are open.  Condotels and fractionally-owned condos have basis to operate. The stated goal of keeping risky outsiders from coming to Florida is defeated in view of capacity-filled RV

parks and hotel parking lots filled with out-of-state license plates.

4.   The constitutional flaws in the challenged "Executive Order" include vagueness and overbreadth, arbitrariness, and discriminatory intent.  Plaintiffs bring this action challenging the Constitutionality of Respondents' Executive Orders, which have deprived them of numerous rights and liberties under both the U.S. and Florida Constitutions.  In doing so, Plaintiffs seek: (1) equitable and injunctive relief to enjoin the enforcement of Respondents' Orders; (2) declaratory relief from this Court in declaring that Respondents' Orders violate Plaintiff's civil rights under: (a) 42 U.S.C. Section 1983 of the Federal Civil Rights Act ("Section 1983"), (b) the Due Process and (c) Equal Protection Clauses of the 5th and 14th Amendments, and (d) under the Contract Clause found in Article I, § 10 of the United States Constitution and (e) Article I, Sections 2, 6, 9, 10, 12, 21, and 23, and Article X, Section 6 of the Constitution of the State of Florida.; (3) attorney's fees and costs for the work done by Plaintiffs' counsel in connection with this lawsuit in an amount according to proof; and (4) for such other and further relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE AND RELIEF

5.   This is an action for declaratory and injunctive relief.   This in an action challenging the constitutionality of the Executive Order 20-112 and by fiat, Executive Order 20-87 as adopted therein, which adversely affect each individual Plaintiffs' civil liberties and constitutional rights. This action arises under 42 U.S.C. § 1983 in relation to Respondent's deprivation of Plaintiffs' constitutional rights to due process and equal protection rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. §

1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

6.    The Middle District of Florida is an appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which the Respondent either maintain offices or do substantial official government work in, exercise their authority in their official capacities, and will continue to enforce the Orders; and it is the District in which a substantial amount of the events giving rise to the claims occurred, which occurrences are state-wide under the Respondent's Executive Order complained of.

7.    Additionally, the jurisdiction of this Court is also invoked pursuant to 42 U.S.C. Secs. 1983, 1985, and 1988.  This is a cause of action also arising under Article I, Section 10 of the Constitution of the United States, and under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.  Additionally, the jurisdiction of this Court is also invoked pursuant to Article I, Sections 2, 6, 9, 10, 12, 21, and 23, and Article X, Section 6 of the Constitution of the State of Florida.

## **PARTIES**

8.    Plaintiffs Galen and Wendy Alsop are a retired military family who live in Destin, Florida, and also own a single-family home in a subdivision in Destin Florida as a short-term rental property.

9.    Florida Beach Rentals, LLC, a Florida LLC, which is located in Clearwater Beach, in Pinellas County, Florida, and is the property rental agent for over 200 rental properties, including those defined as short term rentals in the Clearwater and surrounding areas.

10.   Mike McGrath, is a resident of Clearwater Beach, in Pinellas County, Florida. Mr. McGrath has two short term rentals located on Clearwater Beach, Florida.

11.   Plaintiff, Paul Gasner, is a resident of Dunedin in Pasco County, Florida, who owns four properties located in the Pasco County, and Clearwater Beach area, Pinellas County, Florida.

12   Plaintiff Mark Peery is a resident of Panama City Beach, and his whole work is renting his privately owned 21 individual units and the 150 weeks of time-share rights he owns in a single 14 story building in Panama City Beach, Florida.

13.     At all times material hereto, Ronald Desantis is the duly elected Governor of the State of Florida, was and is a constitutional political officer and elected official of the State of Florida.  Naming  GOVERNOR DESANTIS, as a party in this action is intended to include all of his executive branch Florida employees,  and agents, including but not limited to, the various State and Local Law enforcement agencies and all employees and agents under whose authority to enact and enforce licensing laws, regulations and ordinances is duly governed and limited by, *inter alia*, Sections 252.31-252.60 "Florida Statutes (State Emergency Management Act.") and Article I, Section 24, Florida Constitution.

## STATEMENT OF FACTS

14.   On March 27, 2020 Respondent issued Executive Order 20-87, to close all vacation rental homes for 14 days.  The order went into effect March 29 and was set to sunset of April 10, 2020.  As basis for this order, the Respondent asserted that some number of COVID-19 cases in Florida resulted from "individuals coming into the State of Florida from international travel and other states" and he implied that "attractive lodging destinations" provided by "vacation rentals and third-party [advertising] platforms (i.e., AirBnB and VRBO)" enticed these risky travelers to Florida.

15. Executive Order 20-87 prohibited vacation rental home owners from checking in new

guests and owners and were ordered "to suspend vacation rental operations."  Vacation rental

owners and managers were "prohibited from making new reservations or bookings." The order

defined vacation rental homes under Section 509.013(4)(a), Florida Statute. That statute states:

> (c)   Vacation rental. —A vacation rental is any unit or group of units in a
> condominium or cooperative or any individually or collectively owned single-
> family, two-family, three-family, or four-family house or dwelling unit that is also
> a transient public lodging establishment but that is not a timeshare project.

16.   The directive specifically exempts, and with obvious contradiction of its own

findings, the over 423,000 "Hotels, motels, inns, resorts, non-transient public lodging

establishments, or time share projects."  Long term rentals were exempted as well.

17.   More importantly are the penalties announced in Executive Order 20-87.

Some of these penalties are provided without the required statutory authority under the

State Emergency Management Act (Florida Statutes 252.31-63), and in violation of the

Florida and United States Constitution.  Executive Order 20-87 state as follows:

> Section 2. Violations of the Order:
>
> A. DBPR shall supplement this directive with guidance or directives as necessary
> to implement the order and shall take steps necessary to inspect licensed properties
> or third-party platforms whereby Florida vacation rentals may be advertised.
>
> B. DBPR shall revoke the vacation rental license of any party that violates this
> order or otherwise advertises vacation rental opportunities during the duration of
> this order; and
>
> C. DBPR shall alert the state authorities to evidence of violations or attempts to
> violate this order; and
>
> D. Parties that violate this order or attempt to violate the order through advertising
> or other means of solicitation may be charged with a second-degree misdemeanor,
> punishable as provided in Sections 775.082 or 775.083, Fla. Stat.

18.   Nowhere in Chapter 252, Florida Statutes has the Florida Legislature authorized the

Governor to unilaterally revoke rental licenses without any due process.  In addition, nowhere in

Chapter 252 is the Respondent authorized to inspect properties without a warrant in violation of the United States and Florida Constitution, especially in light of the announced penalties pursuant to Florida Statute 252.50, or to prosecute an individual criminally for exercising speech protected by both the Florida and United States Constitution as a crime.

19.    On April 3, 2020, the Respondent issued Executive Order 20-91, extending Executive Order 20-89 as a Safer at Home order for the entire State of Florida.   Executive Order 20-91 limited activities to Essential Businesses and Activities as defined by Executive Order 20-89, issued on March 30, 2020 (that at the time only applied only to Miami-Dade, Broward, Palm Beach and Monroe County).   Executive Order 20-91 adopted the definitions of Essential Business and Activities found in Miami Dade Emergency Order 07-20, "and as modified by subsequent amendments and orders prior to the date of this order". [1]

---

[1] Also incorporated into Executive Order 20-91 was Miami Dade Emergency Order 09-20 that dealt with "hotels, motels, and short-term vacation rentals and other commercial lodging establishments".  Specifically, Emergency Order 09-20 provided that rental establishments could continue to operate for "Essential Lodgers" defined as follows:

(1) healthcare professionals, (2) first responders, (3) National Guard members, (4) law enforcement, (5) state or federal government employees, (6) airline crewmembers, (7) patients, (8) patients' families, (9) journalists,( 10) others responding to COVID-19, (11) displaced residents or visitors, (12) persons unable to return their home due to COVID-l9 impacts on travel, (13) persons who must vacate their homes due to exigent circumstances, such as fire or flood, (14) persons utilizing hotels as transitional living arrangement's, (15) persons sheltering in hotels due to domestic violence, (16) hotel employees, service providers and contractors, (17) individuals who, for any reason, are temporarily unable to reside in their home ('Essential Lodgers")

        The order provided two restrictions:

(a) Hotels, motels, and other commercial lodging establishments shall not accept new reservations for persons other than Essential Lodgers.

(b) Hotels, motels, and other commercial lodging establishments may accept
reservations r new Essential Lodgers.

        On March 25, 2020, Amendment 1 to Miami Dade Emergency order 9-20 provided the following modification:

Commencing March 26, 2020, hotels, motels, short-term vacation rentals, and other commercial lodging establishments shall not (i) accept any occupants, regardless of when reservations were made, or (ii) extend existing reservations, for persons other than Essential Lodgers.

20. By adopting the definitions listed in the Miami-Dade Emergency Order's, Executive Order 20-91 superseded Executive Order 20-87. However, the Governor and the State continued to enforce Executive Order 20-87 throughout all periods related to this litigation. This series of Executive Orders created confusion. The first vacation rental ban from Executive Order 20-87 was set to end on Friday, April 10, 2020. However, the ban indicted in Executive Order 20-87 was extended twice: First to April 30, 2020, then to May 4, 2020.

21. On April 30, 2020, the Respondent issued Executive Order 20-112, ("Phase 1: Safe. Smart. Step-by-Step. Plan for Florida's Recovery") effective on May 4, 2020. This new Executive Order extended the ban on vacation rentals for an unknown duration of the Recovery Plan. Additionally, Executive Order 20-112 favorably treats one set of individuals and businesses (The owners of the 423,000 hotel rooms not affected by Executive Order 20-87), then those who own properties as defined by Florida Statute 509.242(1)(c), and who are subject to its criminal penalties and revocation of business licenses.

22. The irreparable harm suffered by the Plaintiffs and others similarly situated throughout the State of Florida are the direct result of the threatened enforcement of Executive Order 20-112 and its criminal penalties and administrative sanctions through Executive Order 20-87. In doing so, the Respondent has violated both the Due Process Clause and Equal Protection rights as protected by the 5th and 14th Amendments as well as Article I, Section 10 to the United States Constitution, and the Florida Constitution Declarations of Rights, Article I, Sections 2, 6, 9, 10, 12, 21, and 23, and Article X, Section 6 of the Constitution of the State of Florida. Relief is sought on the basis of the likelihood of success as set forth in the arguments below. Plaintiffs have met

this requirement for the issuance of a temporary restraining order or, in the alternative, a temporary injunction, against the enforcement of the unconstitutional Executive Order.

## PLAINTIFF'S STATEMENT OF JURISDICTIONAL ALLEGATIONS ESTABLISHING STANDING, RIPENESS AND A RIGHT TO RELIEF

23.   Plaintiffs Galen and Wendy Alsop are a retired military family who own a single-family home in a subdivision in Destin Florida as a short-term rental property.  Galen spent ten (10) years in the Navy as a combat veteran aviator, flying F-14D and F-18F as an aircraft carrier aviator. Galen is a veteran of 5 combat deployments.  Galen changed from serving the Country in the United States Navy, to the United States Air Force where he deployed operationally as a F-15E strike fighter pilot from various land bases, while similarly engaged in the war on terror. Galen retired from the Armed Forces in November, 2019, from his final base at Eglin Air Force Base in Florida. Wendy Galen is a teacher with a master's degree who has taught kindergarten through second grade, teaching at new schools with every move of Galen about every three years.

24.   In anticipation of retirement, the Alsops decided that they would use all of their savings to purchase a single-family home in Destin Florida in April 2018, to be used as a rental property to supplement their military pension, with Wendy Alsop quitting her teaching job to oversee the property.   Consequently, 19 other active duty service member families, as friends and colleagues of Galen also purchased homes in the same subdivision all with the similar goal to supplement their income during their career transitions and acquire a viable retirement asset.  All of their spouses now manage their vacation rentals along with Wendy.  All of these military families own properties, just as the Alsops which all are licensed through the Florida Department of Business and Professional Regulation as rental properties.

25.   In the wake of Executive Order 20-87, the Alsops, as well as all their military

colleagues and families had to shut down the rentals of their property. The impact on the Alsops, as well as all others was immediate with depletion of savings and income. The monthly costs associated with their premises alone is approximately $4,000 per month including a mortgage of $3,000, along with the licensing fees, fees levied by the local municipality, along with a $400 per month HOA fee, plus hazard/flood/fire insurance, cable, internet, power, water, sewage and trash. The loss to the Alsops they have suffered and are suffering will be $70-$80,000 by 15 August 2020 due to discriminatory, irrational and unequal restrictions from the Governors overreaching fiat. The Alsops 19 other former squadron mates and their families are similarly affected.  The Alsops, as well as the others always have a professional cleaning done after each rental rotation. That business has lost its work as well due to the Governor's actions.

26.    Plaintiff Florida Beach Rentals, LLC, a Florida LLC, which is located in Clearwater Beach, in Pinellas County, Florida, and is the property rental agent for over 200 rental properties, including those defined as short term rentals in the Clearwater and surrounding areas.  All of the properties rented by Florida Beach Rental are closed for rental due to Executive Order 20-87 and as extended through Executive Order 20-112. Florida Beach Rental has lost over $1,500,000 in business and is unable to conduct the business of renting out such properties.  Such losses continue on a daily basis during the enforcement of this ban and order.

27.  Plaintiff Mike McGrath, is a resident of Clearwater Beach, in Pinellas County, Florida. Mr. McGrath has two short term rentals located on Clearwater Beach, Florida. who does rentals from $1,500 to $3,000 per week. He has lost rental of such properties due to Executive Order 20-87, as further enacted by EO 20-112. And such are owned under a trust. Plaintiff McGrath has had to turn down rentals on a daily basis. Such harm is ongoing to Plaintiff McGrath under the Executive Orders 20-87 as extended by Executive Order 20-112.

28.   Plaintiff, Paul Gasner, is a resident of Dunedin in Pasco County, Florida, who owns four properties located in the Clearwater Beach area, Pinellas County, Florida and Pasco County Florida. Three of these properties are single family homes, and one is a condominium. All of such properties are used as short-term rentals or vacation rentals under the statutory definition. When the properties are rented, they are rented to single families and not subdivided. With the implementation of EO 20-87, Plaintiff Gasner immediately ceased renting such properties. Plaintiff Gasner through is losing approximately $10,000 per month from loss of his ability to rent such properties. In addition, at the end of each rental, each house or condo had a cleaning crew which would come through and be employed to conduct such cleaning. The loss of use and enjoyment of such property is a direct result of the action of the Governor under EO 20-87 as extended and in force under EO 20-112.

29.   Plaintiff Mark Peery is a resident of Panama City Beach, and his whole work is renting his privately owned 21 individual units and the 150 weeks of time-share rights he owns in a single 14 story building in Panama City Beach, Florida. The time share units and the short-term rentals sit side by side in identical floor plans in the same building and on the same floors of the complex. The building is a complete example of the allowed for time-share exempted properties existing and are able to be rented and occupied under Executive Order 20-87, while Plaintiff Peery is completely estopped from any rentals of his 21 individually owned units that site next to such time shares in the building. Due to the criminality and threat of his licensing through the Department of Business and Professional Regulation (DBPR), Plaintiff Peery is still paying HOA fees that are up to $200,000 for the year, and losing $78,500 for this month of May in rentals, and a loss of $143,000 in rentals due to the ban on his individual rentals, while the time shares located in the same building, being identical type units can be rented.

30.   Plaintiffs have and continue to suffer the harms of loss of their business, property use, and other freedoms as set forth above due to the actions of the Governor from the above stated Executive Orders.

31.   Plaintiffs are and will be continued to be threatened with adverse treatment and a denial of due process and their civil rights, on the basis of the Safer at Home Order that is hopelessly vague and fails to alert the Respondent as to what specific conduct could result in their arrest if they exercise their protected liberties.

32.   Plaintiffs have no adequate remedy at law.  No amount of money damages could adequately compensate the Plaintiffs for the irreparable harm described herein, specifically the deprivation of constitutionally protected fundamental rights.

33.   Plaintiffs and the public at large will suffer irreparable injury if injunctive relief is not granted, and if the Respondent is permitted to enforce the provisions of the offending Executive Orders.

34.   There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.  The public interest would best be served by the granting of injunctive relief, and, indeed, the public interest is disserved by permitting the enforcement of invalid Executive Orders.  All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

35.   The acts, practices and jurisdiction of the Governor's office and the State of Florida as set forth herein, were and are being performed under color of state law and therefore constitute state action within the meaning of that concept.

## MEMORANDUM OF LAW
## A. CONSIDERATIONS FOR THE ISSUANCE OF INJUNCTIVE RELIEF

36.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

37.     A temporary injunction should be granted where there is a showing of:

(1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law, (2) the substantial likelihood of success on the merits, (3) that the threatened injury to petitioner outweigh any possible harm to the respondent, and (4) that the granting of the preliminary injunction will not disserve the public interest.  See *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (listing the standard for preliminary injunctions); *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (listing the standard for permanent injunctions).  The same considerations generally apply to the issuance of a Temporary Restraining Order, usually an emergency procedure to maintain the status quo that existed prior to the issuance of the offending and unconstitutional Executive Order until an injunction hearing can be held.  In this submittal, the Plaintiffs set forth a substantial and sufficient basis to show that each of these separate criteria are met and the facts and law set forth herein clearly justify the injunctive relief sought.

## B.  THE ENFORCEMENT OF THE CHALLENGED
## EXECUTIVE ORDER HAS CAUSED AND IS CAUSING PLAINTIFFS
## IRREPARABLE HARM AND PLAINTIFFS
## HAVE NO ADEQUATE REMEDY AT LAW

38.     The Plaintiffs in this action are residents who seek judicial review, due to the unlawful and unequal application of Executive Order 20-112 that violate Equal Protection and Substantive Due Process, and the vague and overbroad nature of the order which violates the due process clause and has no rational basis for its support, *inter alia*.  The pertinent portions of the

order, all of which point to its unconstitutionality, are set forth in the following sections.  In short, the Respondent, with no lawful legislative authority as to license revocation and on the basis of a completely unconstitutional scheme as to criminal sanctions, has now put Plaintiffs on the precipice of being taken into custody of law enforcement, in violation of their civil liberties and the loss of their business license, for otherwise engaging in the same lawful activities being conducted by over 5000 other business entities in control of over 423,000 hotel rooms, with no adequate legal remedy. Additionally, there is no end to the Respondent's ability to repeat enactment of orders that violate the Plaintiffs' rights and liberties.

39.     The Emergency Order manifests a clear and present threat to the civil liberties of the Plaintiffs' resulting in several forms of irreparable harm, vastly exceeding any form of harm simply compensable with money damages. The most egregious form of the irreparable harm occasioned by the challenged Order is found in the loss of constitutional rights and freedoms manifest in the Plaintiffs' rights to engage in the conduct of their lives without excessive government interference with Executive Orders that have no nexus to the goals they attempt to achieve.  In every case, the offending Executive Orders are not narrowly tailored and fail to obtain the compelling interest the orders assert., when they allows 423,000 hotel rooms to come onto the market, but denies the Plaintiffs, who are not multi-national corporations, the same rights and privileges.  Furthermore, the asserted interest by the Respondent has already been met by his own admission made numerous time publicly:  That is to slowed  the spread of COVID 19 in order to "flatten the curve".[2]

---

[2] See Respondent's official Facebook page post on April 27, 2020 "Florida has flattened the curve" at https://www.facebook.com/watch/?v=229628754797826;  *see also* Respondent Statement on April 21, 2020  "We have flattened the curve:' Florida governor says hospitals won't be overwhelmed by COVID-19 patients" at https://www.clickorlando.com/news/local/2020/04/21/we-have-flattened-the-curve-florida-governor-says-hospitals-wont-be-overwhelmed-by-covid-19-patients; on April 22, 2020 "DeSantis says Florida is proof that states can flatten

40.  Executive Order 20-112 violates a bevy of rights that the Plaintiff's possess.  These rights and freedoms include, generally, the right to due process of law, the right to equal protection of the law, and the right to earn a living and enjoy the fruits of one's labors, as well as the ownership and use of private property without undue governmental interference.   The loss of any constitutional right or freedom, in and of itself, constitutes irreparable harm. See *Tampa Sports Authority v. Johnston,* 914 So.2d 1076 (Fla. 2d DCA 2005). Even more importantly, the loss of customers for business impacted adversely by the Emergency Order, and the loss of business goodwill and threats to a business' vitality are also irreparable harm, all of which clearly justify injunctive relief.

41.  The irreparable harm described above is the direct result of the threatened enforcement of the Executive Order  20-112, and the application of the unconstitutional provisions of the order against Plaintiffs.  Plaintiffs have no adequate remedy at law because there is no plain, certain, prompt, speedy, sufficient, complete, practical, or efficient way to attain the ends of justice without enjoining *immediately* the threatened loss of their business license with no due process by the Department of Business and Professional Regulation (DBPR), with no right to even a scintilla of adequate due process. This threat could only come from improper review and/or insufficient training of the law enforcement agencies charged with the responsibility to enforce the Executive Order.  Relief is sought on the basis of the likelihood of success set forth in the arguments in that section. Plaintiffs have met this requirement for the issuance of a temporary restraining order or, in the alternative, a temporary injunction, against the enforcement of the unconstitutional Executive Order or those portions deemed unconstitutional.

---

the curve without 'draconian' orders" at https://www.foxnews.com/media/desantis-florida-coronavirus-flatten-the-curve)

## C. THE MAINTENANCE OF THE STATUS QUO IS
## IS NOT JUSTIFIED AND NECESSARY
## WHILE THIS MATTER IS LITIGATED

42.  The status quo in this matter should not be maintained while litigation is ongoing, and that Plaintiffs should be allowed to continue in their lawful pursuits absent the threat of the criminal and administrative sanctions of the offending Emergency Order that purports to protect the general public at the expense of these Plaintiff's while enriching Corporation engaged in the same line of business on a far larger scale.  While "Hotels, Motels,: and other enumerated identical structures and " businesses continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiffs'  businesses have suffered immeasurably at the hands of government overreach and unconstitutionally restrictive orders passed and enforced by the Respondent's which have had immense disparate impact across every segment or sector of business in Florida. Plaintiffs should continue to live peaceably, without fear of arrest or other harassment by the State or any functionary assigned by the State to "enforce" or "inspect" the subject activities.  Plaintiffs' other constitutional rights and the maintenance of the status quo require the issuance of a TRO and subsequent temporary injunction:

> ... The status quo preserved by a temporary injunction is the last peaceable non-contested condition that preceded the controversy, *Bowling v. National Convoy & Trucking Co.*, 135 So. 541 (Fla. 1931).  One critical purpose of temporary injunctions is to prevent injury so that a party will not be forced to seek redress for damages after they have occurred.  *Lewis v. Peters*, 66 So.2d 489 (Fla. 1953). ...  *Bailey v. Christo*, 453 So.2d 1134 (Fla. 1st DCA 1984).

43.  In the instant action, the last "peaceable non-contested condition" that preceded this controversy was that the Plaintiffs were enjoying their rights to engage in both their business and property rights and the fruits of their pursuits, unencumbered by governmental interference. Obviously, no other such status quo would give any Plaintiffs the right to violate any other existing

statutes or Safer-at-Home order.  Accordingly, the Plaintiff's should be allowed to continue with the operations of their business unencumbered by EO 20-112 by the issuance of a TRO and subsequent temporary Injunction.

### D.  PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS INVALIDATING THE CHALLENGED LEGISLATION

44.     Another consideration in evaluating the grant of injunctive relief is whether the party seeking the injunction shows a substantial likelihood of success on the merits.  In the instant action, Plaintiffs can and will show numerous grounds supporting the relief requested, any one of which would be sufficient to justify the injunctive relief sought herein, and all of which clearly establish that the challenged legislation is invalid and unconstitutional.

45.     The fact that Executive Order 20-112 is of a penal nature that would also operate to deprive a person of due process does not, of itself, justify the invocation of the injunctive machinery in relation to that suit.  However, *when a criminal statute or ordinance is invalid, and its enforcement will result in injury to, or destruction of, property or personal rights, equity may intervene. Deeb v. Stoutamire*, 53 So. 2d 873 (Fla. 1951); *Metropolitan Dade County v. Florida Processing Co.*, 218 So. 2d 474 (Fla. Dist. Ct. App. 3d Dist. 1969). The circumstances must be exceptional and the danger of irremediable loss must be great and immediate. *Pohl Beauty School v. City of Miami*, 118 Fla. 664, 159 So. 789 (1935). Both conditions are present in this action.

46.     Equally as dominant as a "general rule" is the fact that the injunctive remedy is appropriate, on proper showing of injury, to *restrain the enforcement of an invalid law*. *Daniel v. Williams*, 189 So. 2d 640 (Fla. Dist. Ct. App. 2d Dist. 1966); *Board of Com'rs of State Institutions v. Tallahassee Bank & Trust Co.*, 100 So. 2d 67 (Fla. Dist. Ct. App. 1st Dist. 1958).

17

The injury may consist in the infringement of a property right. See *Louisville & N.R. Co. v. Railroad Com'rs*, 63 Fla. 491, 58 So. 543 (1912). It may also exist in the right to earn a livelihood and continue in one's employment. *Watson v. Centro Espanol De Tampa*, 158 Fla. 796, 30 So. 2d 288 (1947). Persons who are the subject of harassment by overzealous, improper, or bad-faith use of valid statutes may be afforded the protection of injunctive relief.  *Kimball v. Florida Dept. of Health and Rehabilitative Services*, 682 So. 2d 637 (Fla. Dist. Ct. App. 2d Dist. 1996).

47.   The instant action manifests all these components. As will be shown in the sections below, this case is one deserving of the grant of injunctive relief.

## E.  THE PUBLIC INTEREST AND "BALANCING TEST"

48.   The Constitutions of the State of Florida and the United States are the ultimate expressions of the public interest.  As a result, the Plaintiffs' rights to enjoy their constitutionally protected rights to conduct their lives free from government intrusion and interference, enjoy due process of law, equal protection of the laws, and the numerous other rights articulated in the above sections cannot be lawfully abridged through the enforcement of the EO 20-112.  The greatest public interest lies in the freedoms and rights to due process guaranteed by the Constitution.

> ... Similarly, the public interest is served by any abatement of unconstitutional activity.  *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1071, (7th Cir. 1976).  *Decker, supra*

See, also, *DiDomenico v. Employers Cooperative Industry Trust*, 676 F.Supp. 903 (N.D. Ind. 1987) and *Zurn Constructors, supra*.  Therefore, the overall public interest is served by safeguarding these Constitutional freedoms and the right to due process.

49.   Additionally, there are volumes of state statutes and Executive Orders in place that can and are being used to regulate Plaintiffs and deter criminal activity, of which none has been

associated with the Plaintiffs' actions so the "balancing test" clearly tilts in favor of the Plaintiffs. Accordingly, the requested TRO/Temporary Injunction should issue.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## OF THE FOURTEENTH AMENDMENT

50.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Respondent has deprived Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

52.   As set forth in this Complaint, Executive Order 20-112 deprives Plaintiffs of their fundamental rights and freedom, yet the order provides exceptions for other activity and conduct that is similar in its impact and effects. The challenged measures lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the order, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause.

53.   When the government treats an individual disparately as compared to similarly situated persons and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis, such treatment violates the equal protection guarantee of the Fourteenth Amendment. As set forth in this Complaint, the challenged measures of Executive Order 20-112 violate the equal protection guarantee of the Fourteenth Amendment.

54.    At its core, the Equal Protection Clause of the 14th Amendment to the U.S. Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, persons similarly situated must be similarly treated. Equal protection is extended when the rules of law are applied equally in all like cases and when persons are exempt from obligations greater than those imposed upon others in like circumstances. Here the Governor has created a distinction which not only results in a loss of business and property rights, but is the creation of loss of license to do business, immediately, without any hearing or determination other than by fiat, by the nature of making violation of the Executive Orders in question. This is a taking in nature of removal of such business right without a differentiation between privately owned small and secluded businesses and those that are larger entities in hotels, motels and time shares.

55.    For that reason, the Plaintiff's posit that the difference between their property, and those that the Governor exempted which are identical except for more of the other class being large corporate owned motels and hotels, and large-scale properties being time shares controlled by larger corporate owners.

56.    In this situation the acts of the State Governor are state actions, *Cooper v. Aaron*, 358 U.S. 1, 16–17 (1958); *Sterling v. Constantin*, 287 U.S. 378, 393 (1932). As such his actions in the unilateral rendition of Executive Order 20-87, and its extension under Executive Order 20-112, are undeniably State actions that implicate the 14th Amendment.[3]

---

[3] The Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially— not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection. Where EO 20-87 as extended by EO 20-112, makes no reasonable distinctions between short term rentals and those of the Corporations that run the 423,000 Hotel rooms not affected by this order.

57. Defendants have intentionally and arbitrarily categorized short term rentals, as defined under Florida Statute 509.242(1)(c). as potential hazards to public safety to be closed, while at the same time in Executive Order 20-87 businesses which are more transient and otherwise offending to the safety of individuals, were not subject to the criminal penalties, being "Hotels, motels, inns, resorts, non-transient public lodging establishments, or time share projects."

58. Those classified as "Short Term Rental," or as engaging in what the Governor has now unilaterally termed as criminal activities, are required to shut down and leave the properties in disuse, and their business use shut down.  Strict scrutiny under the Equal Protection Clause applies where, as here, the classification creates a criminal offense as argued herein.  Without doubt the criminal offense is created by the Governor in Executive Order 20-87, subjecting property and business owners to the criminal penalties argued herein. impinges on an ownership right of not only the property but the business which is based on the Short-Term Rental, including the right to due process among others.

59. Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

60. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from further implementation and enforcing the Orders promulgated under the unilateral authority of the Governor in enacting an Order which makes no logical differentiation between those that occupy or own a hotel, motel, or even a time share, and the Plaintiffs who own properties which are in many cases more secluded such as rental homes, and condominiums on longer stays than those that are exempted in even the smallest of hotels and motels which can have a person stay for one night, not the usual.

21

61.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Executive Orders specifically those provisions of Executive Order 20-87, as extended by EO 20-112. The Plaintiffs have been deprived of their Constitutional rights through various grounds as set forth herein, and the enforcement mechanisms and elements of what occur from the DBPR immediately vacating the license held by

62.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FOURTEENTH AMENDMENT**

63.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

64. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

65. The challenged measures of Executive Order 20-112, as set forth in this Complaint, lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the order, and are a palpable invasion of rights secured by fundamental law in violation of the Due Process Clause of the Fourteenth Amendment.  Defendants' actions, as set forth in this Complaint, deprived Plaintiffs of the use and enjoyment of their property without due process in violation of the Fourteenth Amendment.

22

66.   Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment. These business interests are the licensure of their businesses as vacation or short-term rentals under Florida law by the Department of Business and Professional Regulation (DBPR) under Florida Statute. This fundamental interest is impinged by the caveat and exclusive action of the Governor who in Executive Order 20-87, as it was resurrected (see lapses and history above) in Executive Order 20-112. The fiat of the Governor's Order is that it is a taking of the vacation rental license as authorized by the DBPR is an unlawful taking that is made by mere determination of the DBPR with absolutely no due process.[4]

67.   At no point is the Governor listed with such authority under the Emergency Powers granted by him under Florida statute with such authority to take away the property rights and liberties of property ownership and use of such as a business without any hearing, rights or otherwise as called for under the Due Process clause of the United States Constitution. The Plaintiff's here are subject to absolute revocation of licensing as vacation or short-term rentals by such unfettered discretion which the Governor is granting. Nowhere in the Emergency Acts statute cited herein empowers the Governor with such power. The Governor has, without any implication of due process, allowed for any right of hearing or rebuttal, has set forth a path to take away the

---

[4]  Executive Order 20-87 states in its pertinent part to take away such rights:
Section 2. Violations of the Order
A. DBPR shall supplement this directive with guidance or directives as necessary to implement the order and shall take steps necessary to inspect licensed properties or third-party platforms whereby Florida vacation rentals may be advertised.
B. DBPR shall revoke the vacation rental license of any party that violates this order or otherwise advertises vacation rental opportunities during the duration of this order; and
C. DBPR shall alert the state authorities to evidence of violations or attempts to violate this order; and
D. Parties that violate this order or attempt to violate the order through advertising or other means of solicitation may be charged with a second-degree misdemeanor, punishable as provided in Sections 775.082 or 775.083, Fla. Stat.

rights given to the Plaintiffs without recourse.

68.   The  Executive Orders at issue here  and  Defendant's  enforcement  thereof, violate Plaintiffs' substantive due process  rights  secured  by  the  Fourteenth  Amendment  to  the  U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty,  or  property,  without  due  process  of  law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights.[5]

69.    Defendants' Orders, which expressly deprive Plaintiffs of their rights and liberties in lawfully operating their businesses by ordering the closure of Short-Term Rental or Vacation Rental businesses, did not afford Plaintiffs with a constitutionally adequate hearing to present their case for their businesses to not be shut down. At a minimum, Plaintiffs aver that they should have been able to decide for themselves whether to "shut down" if their businesses /business models were not equipped to properly deal with health and safety guidelines issues by the federal and Florida state governments in connection with the COVID-19 crisis.

70.    Defendants  failed  to  comply  with  the  procedural  and  substantive requirements of the U.S. Constitution in connection with Plaintiffs rights and liberties as they relate to  their  respective  properties / businesses,  which  would  have  given  Plaintiffs a  meaningful opportunity to respond to the enumerated executive Orders and explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiffs.

71.    Because Defendants' decisions in issuing their Orders were made in reliance on procedurally deficient and substantively unlawful processes, Plaintiffs were directly and

---

[5] See *Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. See, e.g., *Eisenstadt v.*Baird, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

proximately deprived of their property, and consequently, their ability to lawfully operate their businesses without unconstitutional government overreach.

72.     Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of an unknown authority other than the Florida Statutes cited granting him emergency authority,  and related laws and statutes with respect to their ability to order the State-wide shut down of such rights that affect hundreds of thousands of properties and licensees, Plaintiffs are being directly and proximately deprived of their property rights absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

73.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from the continuous implementation and enforcing the Orders.

74.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders involved to vacate such based upon the lack of due process set forth in such Orders 20-87 as extended and reinvigorated by Executive Order 20-112.

75.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF
EMERGENCY ORDER 20-112 VIOLATES DUE PROCESS
AND IS UNCONSTITUTIONALLY
VAGUE AND OVERBROAD**

76.   Plaintiffs hereby incorporate by reference all stated paragraphs.

77.   There are innumerable components of the Executive Order 20-112 that leave unlimited

discretion to State and County officials whereby the order is impermissibly vague and overbroad for a "criminal" form of Government Executive Order.

78.   By requiring fair notice of what is punishable and what is not, the law should apply equally without being open to arbitrary application upon the whim of those enforcing it, should not encompass more activity than required by irrationally precluding the exercise of the rights guaranteed by the U.S. and Florida Constitutions, and should not omit persons and groups such that there can be no rational basis for the "law."   Executive Order 20-112 (and by extension Executive Order 20-87) should be found void for vagueness if the order's delegation of authority to police and/or administrators is so extensive that it would lead to arbitrary arrests, fines, revocation of business licenses and prosecutions.

79.   All of the "governmental interests" purportedly "served" by the challenged Executive Order 20-112 have pre-existing remedies found by the Safer at Home orders issued by Governor of the State of Florida on 3 April 2020 (Executive Order 20-91 and its progeny).   The flaws identified in the challenged executive order and its unconstitutional provisions has the effect to allow unbridled discretion by law enforcement and administrative agencies to determine what may be or may not be a violation, and as to whom to apply these unconstitutional provisions.   The challenged Executive Order makes it impossible for law enforcement and the general public  to know what is allowed and what is not allowed, and to whom it is applied or not applied, and decisions as to such may arbitrarily be made by law enforcement with different results to individual engage in similar conduct.

80.   At present, Executive Order 20-112 points to contradictory Executive Orders that provide for separate results depending on where one lives.   In Section 2 of Executive Order 20-112, subparagraph A1, the order points to Executive Order  20-91, which adopts Executive Order

20-89, which adopts multiple emergency orders from Miami Dade County, that result in all hotels being able to rent to 17 categories of "Essential Lodgers" which had the effect of nullifying Executive Order 20-87.   However, the inclusion of Executive Order 20-87 in section 3 of the order is specifically not applicable to Miami Dade, Broward and Palm Beach counties, as stated in the same order under Section 2A2.   At this point in time, individuals engaged in the exact same line of business, in a variety of locations, all have a variety or results as to whether the conduct is lawful or unlawful.

81.    In addition, Executive Order 20-112, prohibition against advertising, criminalizes speech and directs unlawfully revocation of business license without due process.   However, how offending speech is determined to be criminal is not known.   It is utterly subjective to the viewer. It is also location determinative, as those in Dade County are treated differently than those to their immediate north.   Lawful speech should never be subjected to criminal penalties as determined by government.    Ironically, Fortune 500 companies which own hotels or large time share businesses may engage legally in the same speech that the Plaintiffs find themselves subject to criminal and administrative sanctions.

82.    Vagueness doctrine rests on the due process clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution.   By requiring fair notice of what is punishable and what is not, vagueness doctrine also helps prevent arbitrary enforcement of the laws.   Additionally, under vagueness doctrine, an order of this nature is also void for vagueness if an order's delegation of authority to police and/or administrators is so extensive that it would lead to arbitrary prosecutions.

83.    As is here, one is susceptible to prosecution for violations of the Executive Order without ever even showing that they have violated any of the substantive statutory regulations set forth above.   This lack of "personal blameworthiness" renders the threatened criminal prosecution

of the Plaintiffs entirely unlawful, because of the vague nature of the Executive Order, and the potential that individual engage in the same exact conduct are subject to differing outcomes depending on the discretion of the arresting officer.

84.     The vagueness and overbreadth of the Executive Order at issue further establishes the Plaintiffs' clear legal right to the relief they seek and a substantial likelihood of success on the merits.[6]  The vagueness and overbreadth of the challenged order is perhaps most exemplified by the excessive provisions pointing to other Executive Orders, which point to other Emergency

---

[6] The Supreme Court of the United States has ruled on the subject of vague and indefinite statutes and has held that if the act of which a "Respondent" (or "any person" who stands accused) had not previously been construed by the State Courts to fall within the activities proscribed by the act, then until after such construction has occurred, no person can be convicted of a crime that is described in indefinite and vague terms:

The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court.  As was said in *United States v. Harris*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989:

"The constitutional requirement of definiteness is violated by a criminal statute that fails to gives a person of ordinary intelligence fair notice that his conduct is forbidden by the statute.  The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

"Thus we have struck down a state criminal statute under the Due Process Clause where it was not 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'  Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322.  We have recognized in such cases that `a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law," ibid., and that "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.  All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, Bouie v. City of Columbia, 84 S.Ct. 1697 (1964)

80.     Other courts, including in Florida, have entered similar holdings:

"The ordinance is also unconstitutionally overbroad.  By its language the ordinance criminalizes conduct which is beyond the reach of the city's police power inasmuch as conduct "in no way impinges on the rights or interests of others" See *Lazarus v. Faircloth*, 301 F.Supp. 266, 272 (S.D. Fla. 1969);  Effective law enforcement does not require that citizens be at the "mercy of the officers; whim or caprice," See *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949);  "…and the just concerns of the public regarding crime must take rational expression and not become a mindless fear that erodes the rights of a free people" See *Hayes v. Municipal Court of Oklahoma City*, 487 P.2d 974, 980 (Okla.Crim.App.1971).  "A penal statute that brings within its sweep conduct that cannot conceivably be criminal in purpose or effect cannot stand.".  See *City of Pompano Beach v. Capalbo*, 455 So.2d 468 (Fla. 4th DCA 1984).

Orders and their amendments from one specific County, making it impossible to put anyone on fair notice as to what is allowed or not allowed.  Furthermore, the lack of any limitation to the businesses that are renting over 423,000 rooms throughout Florida further exacerbates the confusion of what is allowed or not allowed. [7]

85.   According to the U.S. Supreme Court in *Connally v. General Construction Co.* (1926), a law is unconstitutionally vague when people "of common intelligence must necessarily guess at its meaning."[8]  For example, can one rent to an "Essential Lodger".   If so, may one advertise for

---

[7] Additionally, the cases of *Effie, Inc. v. City of Ocala*, 438 So.2d 506 (Fla. 5th DCA 1983), are instructive in the in this action.  In that case, the plaintiff appealed a trial court's ruling that the city code provisions are valid.  Effie contended that the challenged provisions were invalid because they failed to provide any standards or guidelines upon which the city council may act, thereby permitting the exercise of unbridled discretion by the council, thus denying Effie equal protection of the law.   In determining that the ordinance was void for insufficiency of standards upon which the City could exercise its discretionary authority, the Court stated:

> "We think a City Council may not deprive a person of his property by declining a permit to erect upon it a certain type of garage where the only restriction on the use of the police power is that it shall not be exercised before "due consideration" is given by someone, presumably the councilmen, to the effect of the building upon traffic.   Both the quoted words, as well as their synonyms, could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality.

> "The present ordinance could easily become such an instrument of discrimination…Clearly, the opportunity for the exercise of unbridled discretion is present here, and whether so exercised or not, renders the ordinance unconstitutional."

[8]  At least three Florida Supreme Court cases have declared Florida statutes unconstitutional on substantive due process grounds.  *Schmitt v. State*, 590 So.2d 404, 413 (Fla. 1991); *State v. Walker*, 444 So.2d 1137 (Fla. 2d DCA 1984), aff'd 461 So.2d 108 (Fla. 1984); *State v. Saiez*, 489 So.2d 1125 (Fla. 1986).  In Saiez, at 1128 the Court invalidated a statute which prohibited possession of credit card embossing machines under Section 817.63, F.S. (1983).  Though the statute had a permissible goal, attempting to curtail credit card fraud, the means chosen, prohibiting possession of the machines, did not bear a rational relationship to that goal.  Criminalizing the mere possession of the machines interfered with "the legitimate personal and property rights of a number of individuals who use [them] for non-criminal activities."  Id. at 1129.  In other words, the statute criminalized activity that was otherwise inherently innocent.

In the Saiez case, the Court ruled that the statute violated substantive due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution. The Court stated: "The due process clauses of our federal and state constitutions establish a 'sphere of personal liberty' for every individual subject only to reasonable intrusion by the state in furtherance of legitimate state interests. *See Del Percio*, 476 So.2d at 202 (quoting from *Richards v. Thurston*, 424 F.2d 1281, 1284 (1st Cir.1970))….

"The due process clauses of our federal and state constitutions do not prevent the legitimate interference with

"Essential Lodgers" without committing a crime?   The answer is maybe, or maybe not, depending on who it is the Plaintiff is dealing with at any point in time.   Whether or not the law regulates free speech, if it is unduly vague it raises serious problems under the due process guarantee, which is applicable to the federal government by virtue of the Fifth Amendment and to state governments through the Fourteenth Amendment.

86.   Additionally, the "means selected" of an Executive Order has no reasonable relation to the "object to be attained," if that object is to "prevent the increase in COVID 19 cases" in light of the fact that it allows hundreds of thousands of hotels, motels, etc to do the very same activity. As in *Delmonico, Robinson,* and *Walker[9],* the Respondent has chosen a means which is not reasonably related to achieving ***any*** legitimate rational purpose. It was unreasonable to criminalize class of short-term rentals, while allowing hundreds of thousands of other short rentals to continue unabated, as if the COVID 19 virus was more potent in certain rental rooms and not others.   To the contrary, the entire purpose of the Executive Orders issued by the Respondent is to avoid large crowds which might spread the virus.   And yet, hotels with hundreds, even thousands of rooms and residence therein, accumulating in their various lobbies, have a far greater chance of not engaging in social distancing, then the short-term rentals of one room here or there.   It is not the Government's job to treat its citizens as though they were children, and the elected official are the

---

individual rights under the police power, but do place limits on such interference. *State v. Leone*, 118 So.2d 781, 784 (Fla.1960)…"Moreover, in addition to the requirement that a statute's purpose be for the general welfare, the guarantee of due process requires that the means selected shall have a reasonable and substantial relation to the object sought to be attained and shall not be unreasonable, arbitrary, or capricious. See *Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); *Lasky v. State Farm Insurance Co*., 296 So.2d 9, 15 (Fla.1974); *L. Maxcy, Inc. v. Mayo*, 103 Fla. 552, 139 So. 121, 129 (1931).

[9] As Judge Grimes phrased it in *Walker*, "without evidence of criminal behavior, the prohibition of this conduct lacks any rational relation to the legislative purpose" and "criminalizes activity that is otherwise inherently innocent." 444 So.2d at 1140. Such an exercise of the police power is unwarranted under the circumstances and violates the due process clauses of our federal and state constitution.

only adults in the room.  It should equally be found unconstitutional to use Executive Orders to limit only the Plaintiff's as the lynchpin to achieve whatever purpose the EO was purportedly designed to advance, in light of the hundreds of thousands of hotel rooms as well as time share units even collocated with short term rentals, that are allowed to come into the market, since it seems improbable that enforcing these provisions only against the Plaintiffs will have any remedial impact, other than putting honest people out of work and limiting their income.

87.    The subject Executive Orders are vague, contradictory, way overbroad, confusing, capricious and discriminatory, and are perfect examples of an abuse of power that fails the rational basis test, and thus violates due process and equal protection of the law. These flaw supports the Plaintiffs request for injunctive relief.   It is also for these reasons, that Executive Order 20-112 (and by extension Executive Order 20-87) should be found unconstitutionally vague and overbroad.   The Executive Order provisions are not minor, and they do violence to the Plaintiffs civil liberties. Based on the foregoing, the TRO and temporary injunction are appropriate to stop this unprecedented and invidious Order.

### FOURTH CLAIM FOR RELIEF
### CONTRACTS CLAUSE UNDER
### Article I, § 10 UNITED STATES CONSTITUTION

88.  Plaintiffs hereby incorporate by reference all stated paragraphs.

89.  By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff Cavanaugh of his right to contract without government infringement guaranteed by Article I, Section 10 of the United States Constitution and 42 U.S.C. § 1983.

90.  The Contracts Clause of Article I, Section 10 states, "No State shall . . . pass any . . .

Law impairing the Obligation of Contracts."

91.  It long has been established that the Contracts Clause limits the power of the States to regulate contracts between private parties.

92.  As set forth in this Complaint, the measures of Executive Order 20-112 have impaired and thus regulated the contracts between Plaintiffs and their clients, in violation of the Contracts Clause of the United States Constitution. This impairment will continue absent declaratory and injunctive relief.

93.  As a direct and proximate result of Defendants' violation of the Contracts Clause as set forth in this Complaint, the Plaintiff's has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

## FIFITH CLAIM FOR RELIEF
## VIOLATIONS OF THE FLORIDA CONSTITUTION

94.  Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

95.  Article I of the Florida constitution contains important provisions regarding the basic rights of all Florida citizens to be treated equally before the law and to have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property.  While there is no single, inflexible test by which our courts decide whether the requirements of procedural due process have been met, fundamentally it has been defined by the Courts to mean a structure of laws and procedures that hears before it condemns and proceeds upon inquiry and renders a judgment after trial.[10]

---

[10] *See Watson v. Pest Control* commission of Florida, 199 So2nd 777 ( 4th DCA, 1967).  The constitutional guarantee of due process extends to every type of legal proceeding. *See Pelle v. Dinners Club*, 287 So2nd 737, (Fla. DCA 3rd Dist 1974); Tomayko v. Thomas, 143 So2nd 227 (Fla. 3rd DCA, 1962); *State ex rel. Barancik v. Gates*,

Unfortunately, none of these fundamental requirements were met in the underlying Executive Orders.

96.    Executive Order 20-112 violates the Plaintiff's constitutional rights as protected in the Florida Constitution.    Given that the Legislature, has provided the Governor with immense authority once a declared state of emergency is issued, the only bulwark to protect the citizens of the State of Florida from abuse of power is to be found in both the Florida and United States Constitution.   After Reconstruction was completed, the Florida Constitution has provided intrinsic and unalienable rights and liberties to its citizens.   Chief among those rights and liberties are those found in Article 1 of the Florida Constitution.[11]

---

134 So2nd 497 (Fla. 1961);   It cannot be simply ignored by labeling the proceedings as merely "quasijudicial" or administrative. Nor can it be merely colorable or illusory. See *Ryan's Furniture Exchange v. McNair*, 120 Fla 109, 162 So. 483 (1935).  Nor can it be a mere sham or pretense, *Robbins v Robbins*, 429 So2nd 424, 3rd DCA (1983). As outlined in the case of *Neff v. Adler*, 416 So2nd 1240 at 1242-43 (Fla 4th DCA 1982) the fundamentals of procedural due process include a hearing before an impartial decision-maker, after fair notice of the charges and allegations with a fair opportunity to present one's own case. Fundamental due process includes the duty of the individual presiding over the hearing to apply a correct principle of law or rule, see *State v. Smith*, 118 So2nd 792 (Fla.1st DCA, 1960).

[11] Article 1, Sections 2, 6, 9, 10, 12, 21 and 23 the Florida Constitution provides, in pertinent part:
    a.    SECTION 2.    Basic rights. —All-natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property. No person shall be deprived of any right because of race, religion, national origin, or physical disability.
    b.    SECTION 6.    Right to work. —The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
    c.    SECTION 9.    Due process. —No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself.
    d.    SECTION 10.    Prohibited laws. —No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.
    e.    SECTION 21.    Access to courts. —The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
    f.  SECTION 23.    Right of privacy. —Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
    In addition, Article X, Section 6 of the Constitution of the State of Florida stats as follows:
    SECTION 6.    Eminent domain. —
(a)   No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.

97.    The penalties provisions found in Executive Order 20-87 and 20-112 threaten the Plaintiff's liberty for its violation, and penalties for speech that the Government does not approve. Additionally, and in a clear abuse of power, the Respondent threatens to have business licenses revoked for alleged violations of Executive Order 20-87.   There is no due process provided whatsoever.  The Executive Order serves as a form of judge, jury and executioner, with no right of appeal, save this Petition.  Article I, Section 9 of the Florida Constitution provides that "No person shall be deprived of life, liberty or property without due process of law,..."[12]

98.    The First Amendment of the United States Constitution specifically states that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the 8 press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.  The First Amendment was applied to the states by the Fourteenth Amendment's "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.

99.    Similar to the First Amendment, the Florida constitution also protects speech where "[e]very person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right.  No law shall be passed to restrain or abridge the liberty of speech or of the press." Art. I, § 4, Fla. Const. (1968).

---

(b)    Provision may be made by law for the taking of easements, by like proceedings, for the drainage of the land of one person over or through the land of another.
(c)    Private property taken by eminent domain pursuant to a petition to initiate condemnation proceedings filed on or after January 2, 2007, may not be conveyed to a natural person or private entity except as provided by general law passed by a three-fifths vote of the membership of each house of the Legislature.

[12] See generally *Stromberg v. California*, 283 U.S. 259 (1931) (voided a state statute on grounds of its interference with free speech.  State common law was also voided, with the Court in an opinion by Justice Black asserting that the First Amendment enlarged protections for speech, press, and religion beyond those enjoyed under English common law).

34

100.  Further, the Florida constitution protects the impairment of contracts where no "law impairing the obligation of contracts shall be passed." Art. I, § 10, Fla. Const. (1968). Respondent's Orders have not only interfered with Plaintiffs' rights and liberties as set forth under the United States and Florida Constitution, but have further deprived them of the use, enjoyment and ability to operate their respective businesses on account of a discriminatory classification as "Non-Essential" businesses in relationship to other business similarly situated who are allowed to operated.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § I.

101.  Respondent's Executive Orders have proximately and legally caused tremendous financial harm not just to Plaintiffs businesses, but to the entire Florida economy, which will continue to have deleterious effects unless and until Respondent is enjoined by this Court from enforcing these respective Orders (see *Supra* above).   Requiring Plaintiffs to abstain from conducting lawful business in the State of Florida, despite other compliance measures being taken to satisfy the public health interests at stake, violates their Florida Constitutional liberty rights. See Sections 2, 6, 9, 12 and 23 specifically of the Florida Constitution, Article I.

102.  Florida constitutional guarantee of equal protection and the Fourteenth Amendment's guarantee of equal protection are substantially equivalent and analyzed in similar fashion.   In addition, Florida's constitutional guaranty of equal protection under Article 1 Section 2 of the Florida Constitution has been defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness.  In the instant

case, Executive Order 20-112 has the practical effect of treating hotels, generally owned by stockholders, differently the short-term rental rooms owned by those as sole proprietorship as defined by Florida Statute 509.242(1)(c).   The disparate and unequal treatment of these separate entities is not fully explained and have no rational basis. When time shares in identical buildings as short-term rentals exist and can rent, the irrationality of the Orders are even more apparent.

103.    Requiring Plaintiffs to abstain from conducting lawful business in the State of Florida, despite other compliance measures being taken to satisfy the public health interests at stake, violates their Florida Constitutional liberty rights as found in Article I, section 2.

104.   The penalties listed Executive Order 20-87 as adopted by Executive Oder 20-112 represent violations of the Fifth and Fourteenth Amendments, as well as Article I, § 9 of the Florida Constitution which exist to prevent an unjust taking and demand due process.[13]

105.   Moreover, the principle behind the concept of just compensation for property taken for public use is to put the owner in as good a position pecuniarily as he or she would have occupied if his or her property had not been taken.   Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking.

106.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable

_____

[13] Florida courts have routinely held that the Florida Constitution provides just compensation to property owners when their land is taken for public use because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.   Inverse condemnation is a claim made by a property owner that the effect of a governmental action on its property is so devastating that it is the equivalent of the direct exercise of eminent domain, and thus requires just compensation under the Fifth or 14th amendments. Such claims are also referred to as regulatory takings. In order to establish liability, the property owner must prove that it was deprived of all or substantially all economically beneficial use of its property, whether temporarily or permanently.   See Florida's Bert J. Harris, Jr., Private Property Rights Protection Act, F.S. §70.001 et se.

harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

107.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to Florida Code of Civil Procedure.

## VI.  CONCLUSION

Plaintiffs have demonstrated their entitlement to either a TRO or a Temporary Injunction under Federal and Florida law. As shown herein, Plaintiffs will suffer irreparable harm if injunctive relief and a Temporary Injunction do not issue: as a matter of law, there is no adequate remedy at law for the current and continued deprivation of their constitutional rights and Plaintiffs have a clear legal right to the relief requested and a substantial likelihood of success on the merits in this action.  Most importantly, the public interest demands the preservation of constitutional rights and representation by the people in law-making by the officials they elect for this function. Accordingly, this Court is requested to hold an appropriate hearing and GRANT the Motions for Temporary Injunction, temporarily enjoining Executive Orders 20-112 and 20-87 and actions by the Governor, and all others acting at the behest of the state, from enforcing the challenged Executive Orders against the Plaintiffs and other similarly situated, until such time as a full evidentiary hearing can be held on the issuance of a permanent injunction

**WHEREFORE**, Plaintiffs respectfully request this Court grant the relief requested herein, and issue a TRO and subsequent Temporary Injunction against Respondents, enjoining the enforcement of Executive Orders 20-112 and 20-87 against the Plaintiffs and all other citizens of State of Florida, pending the Court's determination of the merits of an application for a Permanent

Injunction.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that this Court GRANT the following relief:

a) Declaring Executive Order 20-112, section 3D and Executive Order 20-87, to be violative of the aforementioned Florida and United States Constitutional and statutory provisions.

b) Entertain proceedings for the issuance of a Temporary and Permanent Injunction from applying and enforcing Executive Order 20-112, section 3D and Executive Order 20-87 in whole or in part, against Plaintiffs and all other residence of the State of Florida.

c) Awarding any and all attorney's fees and costs as authorized by law;

d) Awarding any and all actual, consequential and special damages to which Plaintiffs are entitled.

e) Such other and further relief as this Court deems fit, just, and equitable.

Respectfully Submitted,


*Patrick N. Leduc*
Patrick N. Leduc
4809 E. Busch Blvd., Ste. 204
Tampa, FL 33617
813-985-4068
813-333-0424
Florida Bar #0964182
Attorney for the Plaintiff's

*Craig Huffman*
Craig Huffamn
4809 E. Busch Blvd., Ste. 204
Tampa, FL 33617
813-985-4068
813-333-0424
Florida Bar #
Attorney for the Plaintiff's


## Certificate of Service

I HEREBY CERTIFY that the foregoing Petition was served on 6 May 2020, in accordance the General Order on Electronic Case Filing (ECF) pursuant to the district's court's system as to EDF Filer, and that a written copy of this filing is served upon the following:

Governor Ron DeSantis
Office of the Governor of the State of Florida
400 S Monroe Street
Tallahassee, FL 32399-2500

Office of the Attorney General
State of Florida
501 Building
501 E Kennedy Blvd #1100
Tampa, FL 33602

*Patrick N. Leduc*
PATRICK N. LEDUC, ESQ.
Patrick N. Leduc, P.A.
4809 E. Busch Blvd., Suite 204
Tampa, FL 33617
(813) 985-4068
Florida Bar No.:0964182