UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GALLEN ALSOP,

    Plaintiff,

v.                                           CASE NO. 8:20-cv-1052-T-23SPF

RONALD DESANTIS,
The Governor of Florida,

    Defendant.
_____/

**<u>ORDER</u>**

    Owners of vacation rental residences, the plaintiffs claim that Executive Order 20-87, issued by Governor Ron DeSantis during a national emergency declared by the president in response to the spread of COVID-19, unconstitutionally suspends in Florida the rental of vacation residences while simultaneously permitting the rental of hotel, motel, inn, and resort rooms, suites, and the like.

    About forty-five days after issuing Executive Order 20-87, Governor DeSantis issued Executive Order 20-123, which authorizes the Department of Business and Professional Regulation (DBPR) to approve a safety plan for the operation of vacation rentals during the COVID-19 pandemic.  In response, the plaintiffs requested and received leave to amend the complaint to address Executive Order 20-123 and moved for a preliminary injunction against Executive Order 20-87

and the executive orders extending Executive Order 20-87.  Opposing the motion for a preliminary injunction, Governor DeSantis (1) defends the decision to ban temporarily vacation rentals but not hotels, motels, inns, and resorts and (2) reports that under Executive Order 20-123 the County Administrator for each county in which a plaintiff owns a vacation rental has submitted — and the DBPR has approved — a safety plan for the operation of vacation rentals.  Despite permission by the DBPR to resume operation, the plaintiffs persist in demanding a preliminary injunction against the enforcement of Executive Order 20-87.

## DISCUSSION

A preliminary injunction issues only if the movant demonstrates (1) that the movant enjoys a substantial likelihood of success on the merits, (2) that the movant will suffer an irreparable injury absent an injunction, (3) that the injury to the movant outweighs the injury to the enjoined party, and (4) that the injunction is not adverse to the public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

1. <u>A minimal likelihood of success on the merits</u>

In the original complaint, issued before Executive Order 20-123 permitted the DBPR to approve vacation rentals, the plaintiffs primarily claimed that Governor DeSantis's executive orders deprived the plaintiffs of equal protection because the executive orders prohibited the operation of vacation rentals but permitted the operation of hotels, motels, inns, and resorts.  Although Executive Order 20-123, issued after the original complaint, permits the operation of vacation rentals in each

county in which a plaintiff operates a vacation rental, the plaintiffs persist in claiming a likelihood of success on the merits of the equal protection claim and the due process claim.[1]

    A.    *Equal protection*

Because the DPBR has approved the operation of vacation rentals in each county in which a plaintiff operates a vacation rental, the plaintiffs can no longer claim that the Governor's executive orders prohibit the operation of vacation rentals because no prohibition against the operation of vacation rentals persists. Rather, the amended complaint and the motion for a preliminary injunction, charitably construed, claim that Executive Order 20-123 deprives the plaintiffs of equal protection because the plaintiffs must operate in accord with the requirements of the safety plan submitted by each County Administrator but hotels, motels, inns, and resorts remain free of the County Administrator's safety plan.

The Fourteenth Amendment of the United States Constitution prevents a state's "deny[ing] to any person within its jurisdiction the equal protection of the laws." If the rule neither infringes a fundamental right nor disadvantages a suspect class, the challenged rule defeats an equal-protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the

---

[1] Also, the plaintiffs claim a substantial likelihood of success on the claims under the commerce clause and the claims under the claims under the Florida Constitution. These claims enjoy minimal (if any) likelihood of success for the reasons identified by Governor DeSantis in the motion to dismiss and the response to the motion for preliminary injunction.

- 3 -

classification." *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313–14 (1993). Under rational basis review, a state official "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Rather, "a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Leib v. Hillsborough Cnty. Public Transp. Com'n*, 558 F.3d at 1306 (citing *Heller*, 509 U.S. at 320). Rational basis review accepts the state official's generalizations about the purpose for the classification "even if there is an imperfect fit between means and ends." *Leib*, 558 F.3d at 1306 (citing *Heller*, 509 U.S. at 320).

Further, the Constitution of the United States "principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020) (Roberts, C.J., concurring) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). If a state official "undertakes to act in areas fraught with medical and scientific uncertainties," the official enjoys an "especially broad" latitude. *South Bay*, 140 S.Ct. 1613 (citing *Marshall v. United States*, 414 U.S. 427, 428 (1974)). A rule "purporting to have been enacted to protect the public health" is subject to challenge only if the rule "has no real or substantial relation to those objects, or is, beyond all question, a plain palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. 11, 37–38 (1905) (upholding a compulsory vaccination law

enacted during the smallpox epidemic). Accordingly, in responding to COVID-19 a governor enjoys "awesome responsibility" because "[t]here are no manuals on how to handle crises." *Henry v. DeSantis*, --- F. Supp. 3d ---, 2020 WL 2479447, at *7 (S.D. Fla. 2020) (Singhal, J.).

The plaintiffs, each an owner of a commercial business, belong to no suspect class, *Talleywhacker, Inc. v. Cooper*, --- F. Supp. 3d --- 2020 WL 3051207, at *9 (E.D.N.C. June 2020) (collecting cases), and restricting a business's permissible mode of operation impinges no "fundamental right," *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 n.5 (2010); *Talleywhacker*, 2020 WL 3051207, at *7. Accordingly, Governor DeSantis's executive orders are subject to rational-basis review. And because Governor DeSantis issued the executive orders in response to a public health emergency, Governor DeSantis enjoys an "especially broad" latitude. *South Bay*, 140 S.Ct. 1613.

The executive orders issued by Governor DeSantis and the classifications in the executive orders fit comfortably within the especially broad latitude afforded to a public official responding to a public health emergency. In Executive Order 20-87 Governor DeSantis finds that "many cases of COVID-19 in Florida have resulted from individuals coming into the State of Florida from international travel and other states" and that "vacation rentals and third-party advertising platforms advertising vacation rentals in Florida present attractive lodging destinations for individuals coming into Florida." Because Governor DeSantis reasonably concluded that

interstate travelers pose a heightened risk of spreading COVID-19 within Florida and that vacation rentals and third-party advertising platforms pose a heightened risk of attracting interstate travelers to Florida, Governor DeSantis temporarily banned vacation rentals to limit the spread of COVID-19 and protect the public health.

Although the plaintiffs claim that the order impermissibly treats vacation rentals differently than hotels, motels, inns, and resorts, Governor DeSantis offers a rational explanation for this classification. Section 509.242(1)(c), Florida Statutes, defines "vacation rental" to mean "any unit or group of units in a condominium or . . . house or dwelling unit that is also a transient public lodging establishment." By definition vacation rentals serve the transient and vacationing public, but hotels, motels, inns, and resorts provide other services to the non-transient public, including dining, entertainment, and other personal services. (Doc. 28 at 20)  Further, although Executive Order 20-123 subjects vacation rentals to a safety DBPR approval, Florida law and the DBPR subject hotels, motels, inns, and resorts to inspection, licensing, sanitation, and safety requirements more intrusive and onerous than the requirements with which vacation rentals must comply. (Doc. 28 at 20) (citing Section 509.032, Florida Statutes) (imposing inspection requirements for hotels and restaurants not imposed on vacation rentals). Further, the plaintiffs identify no provision imposed in a county's safety plan that subjects the plaintiffs to an irrational or excessive restriction on the operation of vacation rentals.

In response to a public health emergency, the Governor temporarily banned the operation of vacation rentals but later permitted operation subject to approval by the DBPR of each county's safety plan. Although Governor DeSantis exempted hotels, motels, inns, and resorts from the temporary ban and DBPR approval, Governor DeSantis's differing treatment fits comfortably within the latitude afforded to a state official responding to a public health emergency. The "precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement" not suitable to second-guessing by an "'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *South Bay*, 140 S.Ct. 1614 (Roberts, C.J., concurring) (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)). The need to avoid judicial second-guessing remains especially acute "where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground." *South Bay*, 140 S.Ct. at 1614. The plaintiffs are unlikely to prevail on the equal protection claim.

B.  *Due process*

The plaintiffs claim a deprivation of procedural due process because Governor DeSantis afforded neither notice nor a hearing before banning vacation rentals or before requiring each County Administrator to apply to DBPR to resume the operation of vacation rentals. The plaintiffs are unlikely to prevail on the due

process claim because the plaintiffs identify no constitutionally cognizable life, liberty, or property interest. Although the plaintiffs claim a property interest in operating their houses and condominiums as vacation rentals, an interest in the "general right to do business" is not a "fundamental right" warranting protection under the due process clause. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a "deprivation" under the Fourteenth Amendment. But business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense."). *Pollard v. Cockrell*, 578 F.2d 1002, 1012 (5th Cir. 1978) (rejecting the "notion" of a fundamental "right to pursue a legitimate business.") Further, even if the executive orders deprive the plaintiffs of a "fundamental right" warranting due process protection, Governor DeSantis has likely provided an adequate post-deprivation remedy by permitting the DBPR to approve the operation of vacation rentals subject to each county's safety plan. *Benner v. Wolf*, --- F. Supp. 3d ---, 2020 WL 2564920, at *4 (M.D. Pa. 2020) (holding that "individualized pre-deprivation process" would "render ineffective any public health measure meant to combat [COVID-19) spread.")

Also, the plaintiffs claim a due process violation because, according to the plaintiffs, the executive orders — without approval by the legislature — subject the plaintiffs to criminal liability for operating a vacation rental in violation of the

executive orders. Specifically, the plaintiffs cite Executive Order 20-87, which states, "[p]arties that violate this order or attempt to violate the order through advertising or other means of solicitation may be charged with a second-degree misdemeanor, punishable as provided in Sections 775.082 or 775.083, Florida Statutes." The argument is meritless. Governor DeSantis issued these executive orders under Florida's Emergency Management Act, which states in Section 252.50, Florida Statutes, that "[a]ny person violating . . . any rule or order made pursuant to [the Emergency Management Act] is guilty of a misdemeanor of the second degree as provided s. 775.082 or s. 775.083." In other words, Governor DeSantis's executive orders impose no criminal liability but remind the plaintiffs that the Emergency Management Act subjects to criminal liability a person who violates an order issued under the Emergency Management Act. The plaintiffs are unlikely to succeed on the due process claim.[2]

  C.  *Other obstacles to the plaintiffs' prevailing on the merits*

Besides defending the merits of the executive orders, Governor DeSantis argues persuasively that the plaintiffs sue the wrong party because Governor DeSantis has deferred to the DBPR to approve the operation of vacation rentals in each county and that the action is moot because the DBPR has approved the

---

[2] Also, the plaintiffs claim that the executive orders are unconstitutionally vague and overbroad. The plaintiffs' argument that the executive orders are unconstitutionally vague because some executive orders incorporate the provisions of other executive orders is meritless. And the overbreadth challenge fails for the same reasons that the equal-protection challenge fails.

- 9 -

operation of vacation rentals in each county in which the plaintiff owns a vacation rental.  Although this order defers a conclusive resolution of these arguments until resolution of Governor DeSantis's motion to dismiss, the likelihood of Governor DeSantis's prevailing on these arguments weighs decisively against finding that the plaintiffs enjoy a substantial likelihood of success on the merits.

2.  <u>Absence of irreparable harm</u>

The plaintiffs claim that absent an injunction the plaintiffs will suffer an irreparable harm.  However, economic loss resulting from the inability to operate a business is compensable by damages and therefore constitutes no irreparable harm.  *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.")  Although a threat of a business's permanently closing can constitute irreparable harm, the plaintiffs present no evidence suggesting that the safety plans approved by the DBPR might result in the permanent closure of the plaintiffs' vacation rentals.  The plaintiffs' ability to operate vacation rentals under the auspices of the DBPR and the County Administrator and the plaintiffs' failure to identify a provision unfairly or unreasonably restricting the operation of vacation rentals weigh decisively against a finding of irreparable harm.

    3.    <u>Balance of the equities and the public interest</u>

Because a state official opposes the preliminary injunction, the analysis of the balance of equities and the analysis of the public interest merge.  Governor DeSantis issued the executive orders in response to a public health emergency, swiftly amended the executive orders in responsive to rapidly changing circumstances, and fairly considered the interests of the persons restrained by the executive orders.  The plaintiffs present no persuasive basis to second-guess Governor DeSantis.

The injury to Governor DeSantis and the threatened harm to the public outweigh decisively the injury — if any — to the plaintiffs.  *Talleywhacker, Inc. v. Cooper*, --- F.Supp.3d ---, 2020 WL 3051207, *14 (E.D.N.C. 2020) (denying preliminary injunction and finding that "where defendant has taken intricate steps to craft reopening policies to balance the public health and economic issues associated with the COVID-19 pandemic, while recognizing the continued severe risks associated with reopening, and where neither the court nor plaintiffs are better positioned to second-guess those determinations, the public interest does not weigh in favor of injunctive relief."); *Xponential Fitness v. Arizona*, 2020 WL 3971908, at *11 (D. Ariz. 2020) (same); *World Gym, Inc. v. Baker*, --- F. Supp. 3d ---, 2020 WL 4274557, at *5 (D. Mass. 2020) (same); *TJM 64, Inc. v. Harris*, 2020 WL 4352756, at *8 (W.D. Tenn. 2020) (same).

## CONCLUSION

The motion (Doc. 27) for a preliminary injunction is **DENIED**.

ORDERED in Tampa, Florida, on August 21, 2020.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE